GEOFFREY A. HANSEN
Acting Federal Public Defender
Northern District of California
JOYCE LEAVITT
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Cellular Telephone:  (415) 517- 4879
Email:         joyce_leavitt @fd.org

Attorneys for ODOM

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | Case No.: CR 4-21-mj-70396 MAG (YGR) |
|---|---|
| Plaintiff, | **DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION TO REVOKE PRE-TRIAL RELEASE ORDER** |
| v. | |
| CAMERON ODOM, | |
| Defendant. | |

**INTRODUCTION**

After a contested detention hearing, the Honorable Robert Illman determined that defendant Cameron Odom could be released on a $25,000 bond co-signed by his mother, Perkeita Converse, to be supervised by pretrial services, with a number of additional conditions. Judge Illman's decision to release Mr. Odom was supported by Pretrial Services, who recommended Mr. Odom's release after preparing a full bail study, as well as vetting Ms. Converse. The conditions include the requirement that Mr. Odom reside with Ms. Converse, who agreed to act as both custodian and surety, as well as other standard conditions, including that Mr. Converse seek and maintain employment or an educational program, not use alcohol to excess or narcotics without a prescription, submit to drug and alcohol testing and treatment, have no contact with gang members, not change residence without the approval of pretrial services, and not travel outside the state of California. The conditions of release reflect the sound judgment of pretrial services who interviewed Mr. Odom, ran a criminal record check, obtained additional information from both Mr. Odom's mother, as well as the ATF agent who arrested Mr. Odom, and then determined that these conditions of release were appropriate.

The government now asks this Court to revoke Judge Illman's thoughtful pre-trial release order.  *See* Dkt. 8, United States' Motion to (1) Revoke Release Order and Order Defendant Detained (2) Temporarily Stay Magistrate Judge's Order Granting Release ("Gov. Mot."). The arguments it raises mirror those contained in the United States' Notice of Motion and Memorandum of Points and Authorities in Support of Motion for Pretrial Detention ("Gov. Memo"), Dkt. 5, which it provided to Judge Illman prior to the detention hearing and also argued at the hearing.  Judge Illman read the Gov. Memo prior to the hearing, considered the same arguments at the hearing and, nonetheless, determined that Mr. Odom should be released. The government has proffered no new evidence that should change the sound conclusion of both pretrial services and Judge Illman. The government's motion argues that Mr. Odom is a danger to the community. Because the government cannot meet its very demanding burden, and conditions have already been fashioned which can adequately mitigate any danger, its motion should be denied.

//

## ARGUMENT

Prior to a conviction, the Bail Reform Act of 1984 requires a court to release a person charged with an offense pending trial, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the Court does not believe that a person's pretrial release on his or her own recognizance will assure the person's appearance or the safety of the community, the Court should impose the "least restrictive further condition, or combination of conditions" necessary to mitigate the risks of nonappearance or danger to the community. 18 U.S.C. § 3142(c)(1)(B). The government bears the burden of proving by clear and convincing evidence "that a defendant is a danger to any other person or the community." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). "To find danger to the community under this standard of proof requires that the evidence support such a conclusion with a high degree of certainty." *United States v. Barnett*, 986 F. Supp. 385, 403 (W.D. La. 1997) (ordering release of defendants charged with murder for hire). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Under the Bail Reform Act, the factors to be considered include:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .
> (2) the weight of the evidence against the person;
> (3) the history characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). Importantly, the weight of the evidence against the defendant is the least important factor. *Hir*, 517 F.3d at 1090. "[T]he statute neither requires nor permits a pretrial determination of guilt." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "The Fifth and Eighth Amendments' prohibitions of deprivation of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been

respected." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).

Pretrial Services and Judge Illman weighed the relevant factors and determined that Mr. Odom could be released. This Court should affirm.

A. **Nature and Circumstances of the Offense**

Mr. Odom is charged with being a felon in possession of a firearm. This offense is not a crime of violence. The nature and circumstances of the offense alleged in the complaint are that on August 26, 2020, Mr. Odom was stopped by California Highway Patrol (CHP) Officers for speeding while driving his sister's car. It was determined that his license was suspended, Mr. Odom was asked to exit the car, and he was found to be in possession of a firearm.

Although the government proffers that "NIBIN[1] 'revealed' that the firearm recovered . . . was 'linked' to a . . . shooting" which had occurred months earlier, Govt. Mot. at p.4, the relative weakness of a NIBIN link does not provide any level of certainty that the gun was, in fact connected to a prior shooting.[2] Furthermore, there is no information to indicate that Mr. Odom had any involvement in, or knowledge of, any shooting which occurred months beforehand.[3]

In addition, the government incorrectly asserts that Mr. Odom was uncooperative at the time of his arrest for this case approximately nine months later on March 31, 2021. As Mr. Odom explained during the detention hearing before Judge Illman, at the time of his arrest, Mr. Odom had loud music playing and could not hear the commands of the officers. According to Mr. Odom, once he saw the police officers he was trying to park his car, but was also moving slowly and trying to keep his hands in the air because he was afraid that they would otherwise shoot him. Mr. Odom repeatedly put his ear to the window to hear what the officers were saying over the music, but kept his hands in view at all times out of fear. When he was out of the car and the officers asked why he had not responded more quickly, Mr. Odom specifically told them that he could not hear what they were saying.

---

[1] NIBIN stands for National Integrated Ballistic Information Network.
[2] In cases where there has been reliance on a NIBIN lead, the government has provided discovery which has included a disclaimer that "A NIBIN Lead does not constitute an identification, and a laboratory request must be submitted for microscopic comparison of the evidence for confirmation." In addition, tool marking forensic evidence has been repeatedly debunked by courts for years now.
[3] To the contrary, it is more likely that if the gun had been used by someone in a shooting, whoever possessed it would have gotten rid of it.

1    Officers allege that another firearm was found in his possession at the time of Mr. Odom's arrest.

2    At the detention hearing, Mr. Odom provided some context for his actions on August 26, 2020,
3    and March 31, 2021, contrasting his conduct after the start of the pandemic and his losing his
4    employment, with the two years prior, during which time Mr. Odom had been working, doing well on
5    supervision and staying out of trouble. From 2018 through the first half of 2020, Mr. Odom was law-
6    abiding, hard-working and trying to be successful.[4] Mr. Odom is aware that he started making bad
7    decisions when he lost his employment, and everything shut down due to the pandemic.

8    Judge Illman specifically asked Mr. Odom to explain why, given that he continued to possess
9    firearms in the past, his conduct this time would be different if he were released as requested. Mr.
10   Odom stated that with his mother willing to sign on a bond and act as a custodian, he would not do
11   anything to jeopardize her security, or otherwise place her at risk. After talking with Ms. Converse
12   and assessing her ability to provide moral suasion over Mr. Odom, Judge Illman agreed that
13   conditions could be set. He further determined that the proposed conditions were sufficient to
14   reasonably assure the safety of the community.

15   The government argues that Mr. Odom's access to firearms and willingness to possess them is
16   troubling, Govt. Mot. at p. 6, and undersigned counsel does not dispute this point. However, counsel
17   disagrees with the government's conclusion that Mr. Odom is therefore unlikely to follow the Court's
18   conditions. Mr. Odom has demonstrated through his time on supervision in 2018 and 2019 that he
19   can comply with any conditions which the Court set and he will not do anything that would put his
20   mother in jeopardy. The Court correctly determined that Mr. Odom should be released.

21   **B.     Mr. Odom's History and Characteristics Support Release**

22   The Bail Reform Act lists several specific characteristics about Mr. Odom this Court must
23   consider in deciding whether he should be released. *See* 18 U.S.C. § 3142(g)(3)(A) and (B). Here,
24   Mr. Odom has lived in the Bay Area his entire life and he has strong family ties to this area, including
25   his mother and sisters. Mr. Odom's mother, Perkeita Converse is willing to be her son's surety and

---

[4] Mr. Odom told undersigned counsel that he successfully completed supervision in 2019. Meanwhile, the government has indicated that he was still on supervision. Mr. Odom believes that this is incorrect.

DEFENDANT'S OPPOSITION TO US MOT TO REVOKE PRE-TRIAL RELEASE ORDER
*ODOM*, 4:21-MJ-70396 MAG (YGR)

4

custodian. Ms. Converse is willing to take this risk because she has seen her son do well and has confidence that he will comply with the conditions of release. Ms. Converse is working full-time, and has no criminal history.

Mr. Odom's prior criminal history does not include crimes of violence. Rather, he has a burglary from when he was a minor, a conviction for carrying a concealed firearm from 2012, and a conviction for being an accessory, which occurred in 2015. There was evidence presented that he was present at the time of a second degree robbery, but was not a participant.   In 2017, he was sentenced to three years and given credit for half time. Mr. Odom was released on supervision in 2018. In 2018, Mr. Odom was meeting with a supervision officer, working, and complying with conditions of release. Mr. Odom stated to undersigned counsel that he did so well on supervision, that it was successfully terminated after another year in 2019.[5] For the next year, Mr. Odom continued to work until the COVID-19 pandemic caused him to lose his focus, after he lost his employment and everything started to shut down. By his own admission, Mr. Odom started making bad decisions which led to the arrests highlighted by the government in 2020 and 2021. However, the evidence is that Mr. Odom will comply with conditions of supervision. He has never failed to appear and the record supports his assertion that he will follow any conditions of release and appear for court as ordered. He has his high school diploma. He has never had bail revoked or warrants issued. He submits that there are conditions of release under the Bail Reform which can be fashioned to reasonably assure that he is not a danger. That is all that is required.

In sum, both pretrial services and Judge Illman correctly concluded that conditions of release could be fashioned to mitigate any danger in this case. This Court should deny the government's motion to revoke Judge Illman's release order. Should the Court determine that additional conditions are needed, Mr. Odom will comply with whatever additional conditions the Court determines to be necessary or appropriate.

/ /

/ /

---

[5] Government counsel has indicated that Mr. Odom was still on supervision but Mr. Odom believes that he had completed supervision in 2019.

DEFENDANT'S OPPOSITION TO US MOT TO REVOKE PRE-TRIAL RELEASE ORDER
*ODOM*, 4:21-MJ-70396 MAG (YGR)

## **CONCLUSION**

For the reasons described above and during the detention hearing, Mr. Odom respectfully asks this Court to affirm Judge Illman's order allowing him to remain out of custody.

Dated: April 9, 2021

Respectfully submitted,

GEOFFREY A. HANSEN
Acting Federal Public Defender

/S
JOYCE LEAVITT
Assistant Federal Public Defender