1  STEPHANIE M. HINDS (CABN 154284)
   Acting United States Attorney
2
3  HALLIE HOFFMAN (CABN 210020)
   Chief, Criminal Division
4
5  ALEXIS JAMES (NYBN 5603865)
   Assistant United States Attorney
6
          1301 Clay Street, Suite 340S
7         Oakland, California 94612
          Telephone: (510) 637-3680
8         FAX: (510) 637-3724
          Alexis.James@usdoj.gov
9
10 Attorneys for United States of America

11                     UNITED STATES DISTRICT COURT

12                    NORTHERN DISTRICT OF CALIFORNIA

13                              OAKLAND DIVISION

14
15 UNITED STATES OF AMERICA,            ) CASE NO. CR 21-259 JST
                                        )
16         Plaintiff,                   )
                                        ) OPPOSITION TO DEFENDANT'S MOTION TO
17      v.                              ) SUPPRESS
                                        )
18 CAMERON ANTHONY ODOM,                ) Date:  January 7, 2022
                                        ) Time:  2:00PM
19         Defendant.                   ) Court: Courtroom 6, 4th Floor
                                        )
20                                      )

21 ─────────────────────────────────

22
23
24
25
26
27
28

OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
CR 21-259 JST

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................................1

II.  STATEMENT OF FACTS ..................................................................................................1

III. PROCEDURAL POSTURE ................................................................................................2

IV.  ARGUMENT .......................................................................................................................3

    A.   The CRIMS check was within the scope of the traffic stop and the probation inquiry did not prolong the stop. ..........................................................................4

    B.   Officers had reasonable suspicion that Odom was armed and dangerous. .........8

    C.   The Exclusionary Rule does not apply to this case............................................10

    D.   Odom is not entitled to an evidentiary hearing ................................................11

V.   CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amanuel v. Soares*,
  2015 WL 3523173 (N.D. Cal. June 3, 2015) ............................................................................ 7

*Arizona v. Johnson*,
  555 U.S. 323 (2009) ............................................................................................................ 3, 4

*Berkemer v. McCarty,*
  468 U.S. 420 ............................................................................................................................ 4

*Brinegar v. United States,*
  338 U.S. 160 (1949) ................................................................................................................ 9

*Burrell v. McIlroy*,
  464 F.3d 853 (9th Cir. 2006) .................................................................................................. 9

*Davis v. United States*,
  564 U.S. 229 (2011) .............................................................................................................. 10

*Foster v. City of Indio*,
  908 F.3d 1204 (9th Cir. 2018) ................................................................................................ 9

*Herring v. United States*,
  555 U.S. 135 (2009) .............................................................................................................. 10

*Illinois v. Caballes*,
  543 U.S. 405 (2005) ................................................................................................................ 4

*Kansas v. Glover*,
  140 S. Ct. 1183 (2020) ........................................................................................................ 3, 4

*Michigan v. Long*,
  463 U.S. 1032 (1983) .............................................................................................................. 9

*Navarette v. California*,
  572 U.S. 393 (2014) ................................................................................................................ 9

*Rodriguez v. United States*,
  575 U.S. 348 (2015) ....................................................................................................... 4, 5, 6

*Terry v. Ohio*,
  392 U.S. 1 (1968) ............................................................................................................ 3, 8, 9

*United States v. Brown*,
  996 F.3d 998 (9th Cir. 2021) .................................................................................................. 9

*United States v. Burkett*,
    612 F.3d 1103 (9th Cir. 2010) ................................................................................................ 8

*United States v. Crenshaw*,
    No. 20-CR-00015-JD-1, 2020 WL 6873422, at *4 (N.D. Cal. Nov. 23, 2020) .......................... 4, 5, 6, 7

*United States v. Evans*,
    786 F.3d 779 (9th Cir. 2015) ........................................................................................... 4, 5, 7

*United States v. Flatter*,
    456 F.3d 1154 (9th Cir. 2006) ................................................................................................ 9

*United States v. Freeman*,
    726 Fed. Appx. 662 (9th Cir. 2018) ................................................................................... 5, 6

*United States v. Garner*,
    152 F. App'x 612 (9th Cir. 2005) .......................................................................................... 9

*United States v. Gorman*,
    859 F.3d 706 (9th Cir. 2017) ................................................................................................. 4

*United States v. Hall*,
    974 F.2d 1201 (9th Cir. 1992) ............................................................................................... 8

*United States v. Harris*,
    No. 16-CR-00222-HSG-1, 2017 WL 11454445, at *3-4 (N.D. Cal. Apr. 18, 2017) ............. 4, 5

*United States v. Howell*,
    231 F.3d 615 (9th Cir. 2000) ............................................................................................... 11

*United States v. I.E.V.*,
    705 F.3d 430 (9th Cir. 2012) ................................................................................................. 4

*United States v. Leon*,
    468 U.S. 897 (1984) ............................................................................................................ 10

*United States v. Lopez–Soto,*
    205 F.3d 1101 (9th Cir. 2000) ............................................................................................... 7

*United States v. Magallon-Lopez*,
    817 F.3d 671 (9th Cir. 2016) ................................................................................................. 8

*United States v. Mati*,
    466 F. Supp. 3d 1046 (N.D. Cal. 2020), *appeal dismissed,* No. 20-10223, 2020 WL 5981185 (9th Cir. Aug. 17, 2020) ........................................................................................................................ 7

*United States v. Mattarolo*,
    209 F.3d 1153 (9th Cir. 2000) ............................................................................................... 9

*United States v. Miles*,
    247 F.3d 1009 (9th Cir. 2001) .................................................................................................. 4

*United States v. Ortiz*,
    No. 5:14-CR-00028-EJD, 2018 WL 3208154, at *3 (N.D. Cal. June 29, 2018) ......................

*United States v. Perez*,
    603 F. App'x 620 (9th Cir. 2015) ............................................................................................ 9

*United States v. Sokolow*,
    490 U.S. 1 (1989) ..................................................................................................................... 9

*United States v. Solorio-Mendoza*,
    731 F. App'x 583 (9th Cir. 2018) .......................................................................................... 11

*United States v. Taylor*,
    716 F.2d 701 (9th Cir. 1983) ................................................................................................... 9

*United States v. Ward*,
    No. 16-CR-00485-JST-1, 2017 WL 1549474, at *3 (N.D. Cal. May 1, 2017) ................... 6, 7

*Utah v. Strieff*,
    136 S. Ct. 2056 (2016) ........................................................................................................... 10

*Whren v. United States*,
    517 U.S. 806 (1996) ................................................................................................................. 7

**STATUTES**

18 U.S.C. § 922(g)(1) ...................................................................................................................... 3

California Penal Code § 32 ............................................................................................................ 2

California Penal Code § 25400 ...................................................................................................... 2

California Vehicle Code Section 22651(p) ................................................................................... 2

Vehicle Code 22349(a) ............................................................................................................... 1, 7

## I. INTRODUCTION

It is settled precedent that checks for outstanding warrants are within the scope of a traffic stop's mission and do not violate the Fourth Amendment. Further, it is well-established that inquiries unrelated to a traffic stop that do not prolong the traffic stop, do not run afoul of the Fourth Amendment either. Law enforcement's check of the Alameda Criminal Records Information Management System, which shows outstanding warrants and probation status, was a part of the mission of the stop. Further, given the purpose of the stop was to investigate a traffic infraction and then tow the vehicle, the probation inquiry did not prolong the stop as the mission of the stop did not and could not have been completed prior to the subsequent pat-down. The information from the records check revealing Odom's gang activity affiliations and his firearms-related criminal history added to officer's already heightened suspicions; establishing reasonable suspicion that Odom was armed and dangerous. Because law enforcement would need to interact with Odom in order to tow the vehicle, a pat-down for officer safety was justified and supported by reasonable suspicion. Thus, the Court should deny Odom's motion to suppress the loaded firearm recovered in this case.

## II. STATEMENT OF FACTS

On August 26, 2021 at approximately 2:23am, California Highway Patrol Officers Xavier Guajardo and Fou Lee were parked on the shoulder of the Highway I-580 Grand Avenue on-ramp when Officer Guajardo observed a BMW SUV speeding past their marked patrol vehicle. Guajardo Decl. ¶ 3. Officer Guajardo activated the patrol vehicle's forward-facing radar device to ascertain the BMW's speed. *Id.* Officer Gujardo observed a speed of 92 mph. *Id.*

Officers Lee and Guajardo effectuated a traffic stop pursuant to Vehicle Code 22349(a); Speeding over 65 MPH. Guajardo Decl. ¶ 3. The BMW exited the highway and pulled over on the shoulder of Liberty Avenue. *Id.* at ¶ 4. Officer Guajardo approached the vehicle's passenger side and Officer Lee its driver side. *Id.* The driver, Cameron Anthony Odom, was the BMW's only occupant. *Id.* at ¶ 5. Officer Guajardo asked Odom about his speed and requested the driver's license and registration. *Id.* Odom provided his California identification card and stated that he did not have his license. *Id.* Odom did not provide insurance or registration information. *Id.* Odom also stated that he was speeding because he was late to return home and that the vehicle belonged to his sister who lived a

few blocks down Liberty Avenue.  Exhibit A at 2:36.  Officer Guajardo observed that Odom appeared nervous.  Guajardo Decl. ¶ 5.  Officer Guajardo requested a DMV records check from dispatch while he returned to the patrol vehicle and did a records check using the Alameda Criminal Records Information Management System (hereinafter "CRIMS").  *Id.* at ¶ 6.  The DMV check revealed that Odom's license status was withheld for failure to appear and that the vehicle was registered to an address on 79th Street in Oakland, contrary to Odom's account.  *Id.* at ¶¶ 6-7.  Prior to the records check, Officer Guajardo asked if Odom was on probation or had been drinking.  Exhibit A at 2:37.  Odom denied both.  *Id.*  The CRIMS search revealed that Odom had a criminal history affiliated with gang activity and firearms.  *Id.* at ¶ 7.  Odom's criminal history includes a 2012 felony conviction for Carrying a Concealed Firearm, pursuant to California Penal Code § 25400 (A)(2) and a 2016 felony conviction for Accessory to a Felony after the Fact, pursuant to California Penal Code § 32.[1]  Because Odom did not have a valid driver's license, Officer Guajardo planned to tow the vehicle pursuant to California Vehicle Code Section 22651(p).  Guajardo Decl. ¶ 6.

      Officer Guajardo returned to the driver's side of the vehicle and had Odom exit the vehicle.  Exhibit A at 9:25-35.  Odom complied.  *Id.*  Officer Guajardo asked Odom if he had any weapons on his person, to which Odom said he did not.  *Id.*  Officer Guajardo executed a pat-down search and immediately felt an object in Odom's waistband that Officer Guajardo immediately recognized to be a firearm.  Guajardo Decl. ¶ 11.  Officer Guajardo removed the firearm and noticed that there was a round in the chamber and its magazine was missing.  *Id.*  Officer Guajardo placed Odom in handcuffs and then searched Odom finding a 22-round extended magazine containing 19 rounds in Odom's pants pocket.  *See id.*  The entire stop lasted approximately eight minutes.[2]  *See* Exhibit A.  The National Integrated Ballistic Information Network (NIBIN) later revealed that the rounds in the firearm and magazine matched shell casings previously collected at the scene of a shooting in Oakland, CA on May of 2020.

### III.  PROCEDURAL POSTURE

On March 2, 2021, the government filed a complaint charging Odom with one count of Felon in

---

[1] While Odom was convicted of Accessory to a Felony after the Fact in 2016, the underlying charges referenced firearms, robbery, and criminal gang activity.

[2] From the initial stop to when Officer Guajardo removed Odom from the vehicle.

OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
CR 21-259 JST                                    2

1  Possession of a Firearm, pursuant to 18 U.S.C. § 922(g)(1).  On March 31, 2021, federal agents arrested
2  and removed Odom from his vehicle.  When the agents removed Odom from his vehicle, they observed
3  a firearm slightly tucked under the driver's seat.[3]  On June 24, 2021, the government filed an Indictment
4  charging Odom with one count of Felon in Possession of a Firearm and Ammunition, pursuant to 18
5  U.S.C. § 922(g)(1).  On October 22, 2021, Odom filed the pending motion to suppress.  Dkt. No. #34.
6  The government files this response in opposition to that motion.

### IV.   ARGUMENT

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV.  The Supreme Court has interpreted the Fourth Amendment to allow for brief detention of persons where there is reasonable suspicion to believe that crime is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  The Court further established that law enforcement may conduct a limited search of a person during a *Terry* stop, without running afoul of the Fourth Amendment, when officers believe that the person is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (citing *Terry*, 392 U.S. at 8).  The Court extended these principles to traffic stops, holding that "officers who conduct routine traffic stops may perform a pat-down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Johnson*, 555 U.S. at 332 (internal quotation marks, alterations, and citation omitted).

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (internal quotation marks and citation omitted).  "Because it is a less demanding standard, reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." *Id.* at 1188.  Indeed, "[t]he standard depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." *Id.* at 1188 (internal quotation marks and citations omitted) (emphasis original).  "Courts cannot reasonably

---

[3] Odom was the sole occupant of the vehicle.  The government has not charged Odom with this second firearm recovered during his federal arrest at this time.

demand scientific certainty where none exists.  Rather, they must permit officers to make commonsense judgments and inferences about human behavior." *Id.* (internal quotation marks and citation omitted).

"[M]ost traffic stops," the Supreme Court has observed, "resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*." *Berkemer v. McCarty,* 468 U.S. 420, 439–440, n. 29 (1984); *see United States v. I.E.V.*, 705 F.3d 430, 438 (9th Cir. 2012) (quoting *United States v. Miles,* 247 F.3d 1009, 1012 (9th Cir. 2001), for proposition that even in the vehicle context the purpose of a *Terry* stop is to allow the officer to pursue investigation without fear of violence).  The Supreme Court and the Ninth Circuit have interpreted the Fourth Amendment to limit the duration of a traffic stop to "'the time reasonably required to complete' the stop's mission." *United States v. Gorman*, 859 F.3d 706, 714–15 (9th Cir. 2017), *order corrected*, 870 F.3d 963 (9th Cir. 2017) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)).  Beyond ensuring that vehicles are operated safely and responsibly, "an officer's mission includes ordinary inquiries incident to [the traffic] stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355.  Law enforcement does not violate the Fourth Amendment when they conduct "unrelated checks" that "do not measurably extend the duration of the stop." *Id.* at 355 (quoting *Johnson*, 555 U.S. at 333; *see, e.g., Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005) (finding that using K9 units to detect drugs during a traffic stop was permissible because it did not extend the stop).

### A. The CRIMS check was within the scope of the traffic stop and the probation inquiry did not prolong the stop.

The Supreme Court concluded that checking for active warrants is within the scope of a traffic stop's mission because it can help ensure law enforcement's safety. *Rodriguez*, 575 U.S. at 356-57 (citing *Johnson*, 555 U.S. at 330); *United States v. Evans*, 786 F.3d 779, 786 (9th Cir. 2015); *see United States v. Crenshaw*, No. 20-CR-00015-JD-1, 2020 WL 6873422, at *4 (N.D. Cal. Nov. 23, 2020) ("[r]unning a record and warrants check on the driver of a car is perfectly legitimate in a traffic stop."); *United States v. Harris*, No. 16-CR-00222-HSG-1, 2017 WL 11454445, at *3-4 (N.D. Cal. Apr. 18, 2017) (noting that a routine "files check" that reports active warrants, criminal history, and probationary

status is within a traffic stop's mission).[4] Even where law enforcement conducts additional investigation unrelated to the stop, no Fourth Amendment violation occurs where there is no measurable effect on the duration of the stop. *Crenshaw*, 2020 WL 6873422, at *4; *see Evans*, 786 F.3d at 786-88 (stating that "the critical question is whether the check prolongs—i.e., adds time to—the stop.") (internal quotes omitted). Thus, "[a]n officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. . . [but] he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Rodriguez*, 575 U.S. at 355.

Courts continue to find that records checks—even when unrelated—are permissible where the traffic stop is not prolonged and/or the checks occur simultaneously with other traffic-related checks. *United States v. Freeman*, 726 Fed. Appx. 662 (9th Cir. 2018), *Crenshaw*, 2020 WL 6873422, at *4; *Harris*, 2017 WL 11454445 *4-5; *United States v. Ortiz*, No. 5:14-CR-00028-EJD, 2018 WL 3208154, at *3 (N.D. Cal. June 29, 2018) (finding that concurrently seeking consent to search a vehicle while mission of the stop ongoing did not prolong a traffic stop). In *Crenshaw*, officers stopped a vehicle with expired registration. *Crenshaw*, 2020 WL 6873422, at *1. Once the vehicle stopped, officers approached the vehicle and one officer asked for license and registration of the driver. *Id.* at *1. There were three individuals in the vehicle; the defendant was a passenger. *Id.* While the driver shuffled for a driver's license and registration, another officer requested identification from the passengers and inquired about the defendant's probation status. *Id.* The defendant stated that he was on post-release supervision and officers called dispatch who verified the defendant's post-release supervision status. *Id.* at *2. The check and verification took approximately 95 seconds and occurred while officers were resolving the registration issue with the driver. *Id.* The officer speaking with the defendant understood the post-release supervision status to mean the defendant was subject to search, thus opening the door and asking the defendant to exit the vehicle. *Id.* A brief scuffle ensued, but eventually officers detained the defendant and recovered a firearm. *Id.* Approximately eight minutes elapsed from the beginning of the stop to the recovery of the firearm. *Id.* at *3. The Court found that the stop was not prolonged by

---

[4] The court found that the traffic stop was not unconstitutionally prolonged, however, the court granted the motion to suppress based on an alternative argument not relevant to our case.

the probation inquiry or verification, as it occurred while the mission of the stop was still ongoing. *Id.* at *4.

Further, when officers' inquiries unrelated to the purpose of the stop occur while officers are still addressing the mission of the stop, no Fourth Amendment violation occurs. *Crenshaw*, 2020 WL 6873422, at *3 (citing *Rodriguez*, 575 U.S. at 354 stating "[a]uthority for the seizure ends when the tasks related to the traffic infraction have been completed, or reasonably should have been completed."). In *Freeman*, officers stopped the defendant for swerving as he drove. *United States v. Freeman*, 726 F. App'x 662, 663 (9th Cir. 2018). Officers asked for license and registration, and then conducted a records check of the defendant. *Id.* at 663. The records check revealed that the defendant was on post-prison supervision, the vehicle was not registered to the defendant, and that the vehicle's insurance had expired. *Id.* While one officer completed the records check and wrote the ticket, another officer returned to the defendant's vehicle and sought consent to search the vehicle. *Id.* Approximately nine minutes after the stop began, officers recovered a firearm and arrested the defendant. *Id.* The defendant argued that officers' request for consent to search prolonged the stop longer than the time necessary to complete the mission of the stop—writing a ticket. *Id.* The court held that because the request for consent occurred while the other officer wrote the ticket, the stop was not prolonged. *Id.* at 664. Further, the court noted that the stop also was not prolonged as the stop was not complete at the time of the firearm recovery. *Id.* The ticketing officer testified that he needed to speak to the defendant's probation officer regarding any outstanding warrants, which would've extended the stop well past the nine minutes. *Id.* "Given the need to investigate potential outstanding warrants and address [the defendant's] lack of insurance, it was not the case here that all 'tasks tied to the traffic infraction ... reasonably should have been ... completed' within nine minutes—the total time from stop to arrest." *Id.* (quoting *Rodriguez*, 575 U.S. at 354).

In *Ward*, this Court suppressed evidence where an officer's unrelated inquiries lead directly to the contraband seized after the point when the stop could've been completed. *United States v. Ward*, No. 16-CR-00485-JST-1, 2017 WL 1549474, at *3 (N.D. Cal. May 1, 2017). After stopping the defendant for expired registration tags, officers requested the defendant's name and identification. *Id.* at *1. The defendant complied and the officer confirmed the information corresponded with the defendant.

1  *Id.* During this process, the officer asked if the defendant was on probation or parole, whether the
2  defendant had anything illegal in his possession, and whether the officer could search the defendant and
3  his car. *Id.* The defendant stated he was not on probation and did not have anything illegal, but that the
4  officer could search. *Id.* Officers recovered a firearm from the defendant's person. *Id.* Considering the
5  stop reasonably could've been completed by the time of the search and "the search of [the
6  defendant's] person and car only occurred because of [the officer's] impermissible questioning," this
7  Court granted suppression as the stop was impermissibly prolonged. *Id.* at *3.

8       Officer Guajardo checked the CRIMS system during the stop to ascertain further information
9  about Odom, including whether he had any outstanding warrants, Odom's probation/parole status, and
10 other information. Guajardo Decl. ¶ 8.[5] Officer Guajardo did inquire about Odom's probation and post-
11 release community supervision (PRCS) status approximately two minutes into the approximately eight-
12 minute stop.[6] Exhibit A at 2:37. However, Officer Guajardo asked during a permissible line of
13 questioning and did not run CRIMS to simply verify the probation status, but to check for any
14 outstanding warrants—valid conduct within the scope of a stop. Further since the verification of
15 Odom's PRCS status occurred simultaneously to the outstanding warrants check, Officer Guajardo did
16 not extend the stop by any measurable amount of time, similar to *Crenshaw*. Once Officer Guajardo
17 learned that Odom did not have a valid driver's license, Officer Guajardo planned to have the vehicle
18 towed. Guajardo Decl ¶ 6, 11. Thus, similar to *Freeman*, the mission of the stop was not completed nor
19 could've been completed in the approximately eight minutes that elapsed by the time of the recovery of
20 the loaded firearm.

---

[5] Odom does not challenge the basis of the stop, but the stop comports with the Fourth Amendment as officers stopped Odom for speeding in violation of Vehicle Code 22349(a). *Whren v. United States,* 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *United States v. Lopez–Soto,* 205 F.3d 1101, 1104–05 (9th Cir. 2000) ("the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops").

[6] District courts have held that probation/parole verification is outside the scope of a routine traffic stop. *United States v. Mati*, 466 F. Supp. 3d 1046, 1056 (N.D. Cal. 2020), *appeal dismissed,* No. 20-10223, 2020 WL 5981185 (9th Cir. Aug. 17, 2020); *see, e.g., United States v. Ward*, 2017 WL 1549474, at *1 (N.D. Cal. May 1, 2017), *Amanuel v. Soares*, 2015 WL 3523173, at *7 (N.D. Cal. June 3, 2015) (stating further that questions regarding probation are akin to questions about ex-felon status); *cf. United States v. Evans*, 786 F.3d 779 (9th Cir. 2015) (holding that questions regarding ex-felon status are outside the scope of the stop).

This case is wholly distinguishable from *Ward* for several reasons. First, Officer Guajardo made fewer inquiries that were unrelated to the mission of the stop. Officer Guajardo asked about PRCS status but did not ask to search or whether there was any illegal contraband.[7] Second, the officer's unrelated inquiry did not lead directly to the loaded firearm later recovered from Odom's person, unlike in *Ward*. Third, in the present matter, the stop was incomplete. Because Officer Guajardo planned to tow the vehicle, at the time of the firearm recovery the tasks related to the stop were not and could not have been completed.

Because the CRIMS check was within the scope of the stop, no Fourth Amendment violation occurred. While courts have ruled that questions regarding PRCS are unrelated to the mission of the stop, the question occurred approximately two minutes into the stop and before the stop was completed or could be reasonably completed; evidencing no prolongation of the stop.

**B.   Officers had reasonable suspicion that Odom was armed and dangerous.**

In order to complete the mission of the stop—tow the car—officers would need to remove Odom from the vehicle and interact with him further. Given the information that Officer Guajardo had regarding Odom, the concern for his own safety was warranted. The combination of the time of day, Odom's nervousness, the inconsistent information Odom provided law enforcement, and Odom's gang activity and firearms-related criminal history supplied reasonable suspicion that Odom was armed and dangerous, validating a pat-down search for officer safety.

To ascertain whether an individual is armed and dangerous justifying a pat-down search or *Terry* frisk, the Court considers the "totality of the circumstances surrounding the stop." *United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010) (quoting *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992)). This is an objective analysis, and an officer's subjective reasons for conducting a stop or arrest are irrelevant. *See United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 28. Indeed, all that is required is that the officer "be able to point to specific

---

[7] The officer does later ask about weapons; however, the inquiry was in preparation for the pat-down after the officer had reasonable suspicion that the defendant was armed and dangerous.

OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
CR 21-259 JST                              8

and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a belief that the individual is armed and dangerous, *id.* at 21—simply "more than an inchoate and unparticularized suspicion or hunch," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted).

When Officer Guajardo stopped Odom, it was 2:23am—nighttime. Guajardo Decl. ¶ 3. Vehicular stops are already dangerous, and nighttime only heightens that danger. *See Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (stating that traffic stops are "especially fraught with danger to police officers."); *United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000) (finding relevant that the frisk occurred at nighttime); *see also United States v. Garner*, 152 F. App'x 612, 613 (9th Cir. 2005) (considering time of day, among other things, as a part of the reasonable suspicion for a frisk analysis). Officer Guajardo also observed Odom appeared nervous, shifting and moving in the vehicle. Guajardo Decl. ¶ 5. While nervousness can be consistent with innocent behavior, it is not precluded from the reasonable suspicion analysis.[8] *United States v. Brown*, 996 F.3d 998, 1007-08 (9th Cir. 2021) (reiterating that "abrupt movements or suspicious, furtive behavior" can justify officer fear for safety giving rise to frisk (internal quotation marks and citation omitted)); *United States v. Taylor*, 716 F.2d 701, 709 (9th Cir. 1983) (noting defendant's furtive movement partially justified frisk). Further, Odom provided Officer Guajardo with information that was inconsistent with the information ascertained from the DMV records check of the vehicle. Guajardo Decl. ¶ 7. Lastly, the CRIMS records check revealed that Odom had affiliations with gang activity and a firearms-related criminal history. Guajardo Decl. ¶ 7. This information only heightened the dangerousness of the stop and added to the reasonable suspicion that Odom was armed and dangerous. *See Burrell v. McIlroy*, 464 F.3d 853, 858 n.3 (9th Cir. 2006) (relying on *Brinegar v. United States,* 338 U.S. 160, 177 (1949), to note that it is permissible to consider a defendant's criminal history in the reasonable suspicion analysis); *United States v. Perez*, 603 F. App'x 620, 622 (9th Cir. 2015) (finding reasonable suspicion partially based on previous arrests and criminal conduct, as criminal history is "relevant and highly probative to the reasonable suspicion

---

[8] Moreover, officers "need not rule out the possibility of innocent conduct." *Navarette v. California*, 572 U.S. 393, 403 (2014); *see Foster v. City of Indio*, 908 F.3d 1204, 1216 (9th Cir. 2018) (noting that "even factors consistent with innocent conduct may give rise to reasonable suspicion") .

OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
CR 21-259 JST                                             9

1  calculus."); *cf. United States v. Flatter*, 456 F.3d 1154, 1158 (9th Cir. 2006) (holding no reasonable suspicion present partially because no past violent criminal history).[9]

Because of the time of night, Odom's nervousness, the inconsistent information, and Odom's criminal history involving firearms and gang activity, Officer Guajardo had reasonable suspicion that Odom was armed and dangerous.

### C. The Exclusionary Rule does not apply to this case.

Should the Court find that a constitutional violation occurred, suppression would not be appropriate in this case. Suppression should only be employed where it will effectively deter police misconduct. *Davis v. United States*, 564 U.S. 229, 237 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)); *Herring v. United States*, 555 U.S. 135, 137 (2009) ("suppression is not an automatic consequence of a Fourth Amendment violation," but instead "turns on the culpability of the police and the potential of exclusion to deter wrongful police misconduct"). The costs of suppression are real: "[e]xclusion exacts a heavy toll on both the judicial system and society at large. It almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence. And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Davis*, 564 U.S. at 237 (citations omitted). Thus, suppression must be viewed as a "last resort." *Id.* (citation omitted); *accord Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) ("Suppression of evidence . . . has always been our last resort, not our first impulse.").

During the entirety of the stop, law enforcement acted reasonably and in good faith. Officer Guajardo observed and stopped an individual traveling well above the legally permissible speed in the middle of the night. *See* Guajardo Decl. ¶ 3-4. Officer Guajardo then took the appropriate steps to verify the individual and address the stop. Officer Guajardo even reached out to dispatch for the DMV check while he simultaneously checked the CRIMS records, essentially expediating the traffic stop where he could. *See* Guajardo Decl. ¶ 6. Should the Court suppress the evidence of a loaded firearm simply because an officer asked a question that did not measurably prolong the stop, would be a

---

[9] It's worth noting that driving without a license—though a misdemeanor and treated as a minor traffic infraction on most occasions—is an arrestable offense. Officer Guajardo could've legally arrested Odom and searched Odom incident to the arrest; recovering the firearm.

miscarriage of justice.[10]  Further, suppression would serve no deterrent value.  Thus, the Court should decline to utilize the exclusionary rule.

### D. Odom is not entitled to an evidentiary hearing

"To obtain an evidentiary hearing on a motion to suppress, a defendant must establish contested issues of material fact." *United States v. Solorio-Mendoza*, 731 F. App'x 583, 586 (9th Cir. 2018); *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

In his opening brief, Odom has not established any contested issues of material fact.  While he may raise various arguments on Reply, the patrol vehicle dash camera footage speaks for itself regarding what happened on August 26, 2021.  As such, there are not contested issues of material facts that require an evidentiary hearing.

The CRIMS records check for outstanding warrants was within the scope of the stop.  This conduct is consistent and permitted under the Fourth Amendment.  Further the officer's probation inquiry did not run afoul of the Fourth Amendment, as it did not prolong the duration of the traffic stop.  The stop itself, from start to pat-down, was approximately eight minutes in duration.  However, because Odom did not have a valid driver's license, Officer Guajardo planned to tow his vehicle.  Thus, the mission and duration were not complete at the time of pat-down.  Officer Gujardo had reason to believe that Odom was armed and dangerous considering the time of night, Odom's nervous appearance and inconsistent answers, and Odom's firearms-related criminal history.  Given this suspicion and that Officer Guajardo would need to remove and interact with Odom in order to tow the vehicle, Officer Guajardo had a legitimate concern for his safety.  Because of that safety concern supported by reasonable suspicion, the pat-down leading to the recovery of a loaded firearm did not violate the Fourth Amendment.

//
//
//
//

---

[10] This is especially true considering that the officer asked as a safety precaution.  *See* Guajardo Decl. ¶ 5.

//

## V. CONCLUSION

For the foregoing reasons, this Court should deny Odom's motion to suppress.

DATED:  November 5, 2021                              Respectfully submitted,

                                                      STEPHANIE M. HINDS
                                                      Acting United States Attorney

                                                       /s/  Alexis James
                                                      ALEXIS JAMES
                                                      Assistant United States Attorney

# EXHIBIT A

[DASH CAMERA FOOTAGE SUBMITTED TO THE COURT AND DEFENSE COUNSEL]