1  STEPHANIE M. HINDS (CABN 154284)
United States Attorney

2

3  THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

4  KAITLIN PAULSON (CABN 316804)
Assistant United States Attorney

5
       450 Golden Gate Ave., 11th Floor
6      San Francisco, California 94102
       Telephone: (415) 436-6824
7      Cell: (415) 412-0168
       kaitlin.paulson@usdoj.gov
8
   Attorney for United States of America
9

10                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA
11
                     SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,              )  **CASE NO. 21-CR-00259 JST**
                                           )
14          Plaintiff,                     )  **UNITED STATES' MOTION TO RECONSIDER**
                                           )  **THE COURT'S ORDER TO SUPPRESS**
15       v.                                )  **EVIDENCE**
                                           )
16  CAMERON ANTHONY ODOM,                  )
                                           )
17          Defendant.                     )
    _____    )
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION....................................................................................................1

3    II.   ARGUMENT .........................................................................................................2

4          A.    Odom Waived Raising the Issue of the Tow, Which in Any Event Was
                 Constitutional..............................................................................................2
5
6                (i)    The government was deprived wholesale of the opportunity to
                        brief, present evidence, and argue the tow's constitutionality...................2

7                (ii)   The community caretaking exception is applicable here ...........................4

8          B.    The Court Failed to Properly Apply the Totality of Circumstances Analysis
                 for Reasonable Suspicion and Erred in Omitting or Discounting Relevant
9                Factors.........................................................................................................7

10               (i)    Legal Standard ........................................................................................7

11               (ii)   The Court's mode of reasonable suspicion analysis parallels the
                        impermissible divide-and-conquer approach as opposed to the
12                      requisite assessment of the totality of the circumstances...........................9

13               (iii)  Looking at the totality of circumstances, the officers' frisk of
                        Odom comports with the Fourth Amendment ...........................................10
14
                        (a)    Prior criminal history ...............................................11
15
                        (b)    Time of day................................................................12
16
                        (c)    Nervousness ...............................................................13
17
                        (d)    Inconsistent information ..............................................14
18
                        (e)    Time spent in the car before frisk ...............................16
19
                        (f)    Totality of circumstances analysis ..............................16
20
                 (iv)   The Exclusionary Rule does not apply .......................................16
21
22   III.   CONCLUSION ...................................................................................................18

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Johnson*,
  555 U.S. 323 (2009)..................................................................................................... 7

*Foster v. City of Indio*,
  908 F.3d 1204 (9th Cir. 2018) ..................................................................................... 8

*Herring v. United States*,
  555 U.S. 135 (2009).................................................................................................... 16

*Illinois* v. *Wardlow*,
  528 U.S. 119 (2000).................................................................................................... 13

*Kansas v. Glover*,
  140 S. Ct. 1183 (2020)............................................................................................. 7, 8

*Miranda v. City of Cornelius*,
  429 F.3d 858 (9th Cir. 2005) ....................................................................................... 4

*Navarette v. California*,
  572 U.S. 393 (2014)...................................................................................................... 8

*Ornelas v. United States*,
  517 U.S. 690 (1996).................................................................................................... 12

*Smith v. March*,
  194 F.3d 1045 (9th Cir. 1999) ..................................................................................... 3

*Terry v. Ohio*,
  392 U.S. 1 (1968).......................................................................................................... 7

*U.S. v. I.E.V.*,
  705 F.3d 430 (9th Cir. 2012) ..................................................................................... 16

*United States v. Arvizu*,
  534 U.S. 266 (2002)................................................................................. 2, 8,9,10,11,12

*United States v. Brown*,
  996 F.3d 998 (9th Cir. 2021) ..................................................................................... 13

*United States v. Burkett*,
  612 F.3d 1103 (9th Cir. 2010) .............................................................................. 7, 8, 12

*United States v. Busby*,
  No. CR 11-00188 SBA, 2013 WL 3296537 (N.D. Cal. June 28, 2013)....................... 3

*United States v. Cervantes*,
   703 F.3d 1135 (9th Cir. 2012) ................................................................................ 4, 6

*United States v. Cotterman*,
   709 F.3d 952 (9th Cir. 2013) ................................................................................... 13

*United States v. Dieter*,
   429 U.S. 6 (1974) ........................................................................................................ 1

*United States v. Garner*,
   152 F. App'x 612 (9th Cir. 2005) ............................................................................ 11

*United States v. Granados*,
   No. 20-10289, 2022 WL 612670 (9th Cir. Mar. 2, 2022) ...................................... 9, 17

*United States v. Gutierrez Rodriguez*,
   2007 WL 2778917 (N.D. Cal. Sept. 27, 2007) ......................................................... 3

*United States v. Hall*,
   974 F.2d 1201 (9th Cir. 1992) ................................................................................ 7, 8

*United States v. Healy*,
   376 U.S. 75 (1964) ...................................................................................................... 1

*United States v. Ibarra*,
   502 U.S. 1 (1991) ........................................................................................................ 1

*United States v. Leal*,
   5 F. App'x 608 (9th Cir. 2001) ........................................................................... 10, 15

*United States v. Magallon-Lopez*,
   817 F.3d 671 (9th Cir. 2016) ................................................................................. 7, 8

*United States v. Mattarolo*,
   209 F.3d 1153 (9th Cir. 2000) ................................................................................ 11

*United States v. Perez*,
   603 F. App'x 620 (9th Cir. 2015) ........................................................................... 13

*United States v. Rabb*,
   752 F.2d 1320 (9th Cir. 1984) .................................................................................. 3

*United States v. Sokolow*,
   490 U.S. 1 (1989) ........................................................................................................ 7

*United States v. Valdes-Vega*,
   738 F.3d 1074 (9th Cir. 2013) ................................................................................ 12

*United States v. Williams*,
   419 F.3d 1029 (9th Cir. 2015) ........................................................................................ 7

## **Constitution**

U.S. Const. amend. IV ...................................................................................................... 7

## **Rules**

Fed. R. App. P. 4(b)(1)(B)(i) ........................................................................................... 1

## I.    INTRODUCTION

The government respectfully requests that the Court reconsider its order, dated March 2, 2022, granting defendant Cameron Anthony Odom's motion to suppress evidence.  Dkt. 49 (Suppression Order).  The government's notice of appeal is due on April 1, 2022.  Fed. R. App. P. 4(b)(1)(B)(i).  A motion to reconsider filed on or prior to that date, as this motion is being filed, tolls the deadline for filing a notice of appeal.  *United States v. Ibarra*, 502 U.S. 1, 4 (1991) (per curiam) (citing *United States v. Dieter*, 429 U.S. 6, 8–9 (1974) (per curiam)); *United States v. Healy*, 376 U.S. 75, 77–78 (1964)).

The government respectfully requests reconsideration on two grounds:  First, the Court deemed unconstitutional the tow of the BMW SUV that Odom was driving.  Dkt. 49 at 9.  Odom never raised this claim in his motion to suppress and only addressed it for the first time in his reply.  *Compare* Dkt. 34 (Motion to Suppress) (containing no challenge to the BMW's tow), *with* Dkt. 42 (Reply) (challenging to the tow).  In the hearing on the motion, the Court repeatedly stated that the tow was valid and did not allow the government an opportunity to brief, argue, or provide evidence on the issue.  *See, e.g.*, Dkt. 55 (Suppression Hearing Transcript ("Supp. Tr.")) 39:2-17 (stating at the outset of the government's argument that "[the government is] going to win the tow issue" and asked the government to move on to a separate issue in the case); 15:19-23 ("I think it was a legitimate tow."); 16:16-25 ("I still think [the defendant] lose[s] on community care-taking."); 17:18-22 (finding that the pretextual community caretaking cases the defendant relied upon were not applicable to the instant case); 18:11-19 (explaining that "it wasn't crazy to think that there's a community care-taking [exception]" for a BMW that would otherwise be left "unsecured at 2:30 in the morning" "in the middle of nowhere"); 21:19-25 (rejecting defense counsel's attempt to raise another argument about the tow and directing counsel to move to a separate issue).  Accordingly, this Court should consider the issue waived by Odom or grant reconsideration and permit the government an opportunity to address it.  On reconsideration, the Court should conclude that its original assessment at the hearing was correct—the constitutionality of the BMW's tow was amply supported on this record, as discussed below.

Second, in concluding that the officers did not have reasonable suspicion to frisk Odom—despite the late-night traffic stop during which Odom acted nervously and shifted around the BMW, possessed no

1  license or registration, had gun- and gang-related criminal history, and provided inconsistent information

2  to the officer—the Court mistakenly weighed the relevant factors, and erroneously omitted or discounted

3  several.  Dkt. 49 at 19.  Specifically, the Court provided innocuous explanation or limited weight to be

4  assigned to each factor, akin to the proscribed "divide-and-conquer analysis," instead of engaging in the

5  "totality of the circumstances . . . to see whether the detaining officer has a particularized and objective

6  basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *see id.* at 274,

7  277 (noting that each of defendant's "acts was perhaps innocent in itself" but, when viewed together, may

8  still warrant a frisk); *accord United States v. Cotterman*, 709 F.3d 952, 970 (9th Cir. 2013) (en banc) ("It

9  is not our province to nitpick the factors in isolation but instead to view them in the totality of the

10  circumstances.").  Because of this methodological error, the Court erred in finding no reasonable suspicion

11  and holding that the exclusionary rule applied.

12       The government respectfully moves the Court to reconsider its Suppression Order.

13  **II.    ARGUMENT**

14       **A.    Odom Waived Raising the Issue of the Tow, Which in Any Event Was**
             **Constitutional**

15
16            **(i)    The government was deprived wholesale of the opportunity to brief,**
                    **present evidence, and argue the tow's constitutionality**

17       In its Suppression Order, the Court ruled that the government failed to satisfy its burden of

18  establishing the applicability of the community caretaking exception for the tow of the BMW in which

19  Odom was pulled over.  Based on this determination, the Court excluded the loaded gun found in Odom's

20  waistband, explaining that, but for the tow, the defendant would not have been removed from the car and

21  searched. [1]  Odom, however, only raised the issue of the tow's constitutionality in his reply brief, to assert

---

[1] Even if the Court continues to believe the tow was unjustified on this record, Odom does not achieve suppression: officers can order drivers out of cars without any cause, *see Pennsylvania v. Mimms*, 434 U.S. 106 (1977), and therefore there was no "causal connection between the illegality and the evidence," *United States v. Johns*, 891 F.2d 243, 245 (9th Cir. 1989).  In other words, whether towing the car was constitutional or not, officers had every right to order Odom out of the car under binding Supreme Court and Ninth Circuit case law, and so there was no causal connection between the tow and the recovery of the firearm—and a causal connection is required under the fruit-of-the-poisonous-tree doctrine.  Indeed, the doctrine of inevitable discovery also applies here—officers would have no doubt ordered Odom out of the car regardless of whether the car was towed, as Odom did not have a license to operate the vehicle.  *See Nix v. Williams*, 467 U.S. 431 (1984) (holding inevitable discovery applies where evidence would have been discovered even without the constitutional violation).  Accordingly, the government urges the Court to revisit its determination that the "failure to establish a Fourth Amendment exception"

GOV'T MOTION TO RECONSIDER SUPPRESSION ORDER

CASE NO. 21-CR-00259 JST                    2

1   in the first instance that the government failed to meet its burden with respect to the community caretaking

2   exception.  Dkt. 42 at 11.  Indeed, in his opening brief, Odom never mentioned the tow, much less raised

3   the tow's constitutionality.  Dkt. 39.  Moreover, in the opening brief, Odom did not contest the traffic stop,

4   Odom's failure to possess a driver's license, or the fact that the car had no registration.  *Id.*  As a result,

5   the government was availed no opportunity to brief or present evidence on the untimely issue of the tow's

6   constitutionality prior to the suppression hearing.

7           Then, at the suppression hearing, the government was effectively prevented from arguing the issue

8   because the Court stated at the outset of the government's argument that "[the government is] going to

9   win the tow issue" and directed the government to move on to a separate issue in the case, instead of

10  addressing the tow's constitutionality.  Supp. Tr. 39:2-17.  The Court had also stated this opinion

11  throughout its colloquy with defense counsel earlier in the hearing.  *See, e.g.*, Supp. Tr. 15:19-23 ("I think

12  it was a legitimate tow."); 16:16-25 ("I still think [the defendant] lose[s] on community care-taking.");

13  17:18-22 (finding that the pretextual community caretaking cases the defendant relied upon were not

14  applicable to the instant case); 18:11-19 (explaining that "it wasn't crazy to think that there's a community

15  care-taking [exception]" for a BMW that would otherwise be left "unsecured at 2:30 in the morning" "in

16  the middle of nowhere"); 21:19-25 (rejecting defense counsel's attempt to raise another argument about

17  the tow and directing counsel to move to a separate issue).

18          Generally, "arguments not raised by a party in its opening brief are deemed waived."  *Smith v.*

19  *March*, 194 F.3d 1045, 1052 (9th Cir. 1999); *see  United States v. Busby*, No. CR 11-00188 SBA, 2013

20  WL 3296537, at *4 (N.D. Cal. June 28, 2013), *aff'd*, 613 F. App'x 627 (9th Cir. 2015) (finding an issue

21  not properly before the court because the defendant raised it for the first time in his reply brief to his

22  motion to suppress and so deprived "the Government an opportunity to respond"); *United States v.*

23  *Gutierrez Rodriguez*, 2007 WL 2778917 (N.D. Cal. Sept. 27, 2007) (holding that defendant's argument

24  that was raised for the first time in the reply was waived because "the government was not provided with

25  an opportunity to respond").  While courts have leeway to hear and rule on untimely raised constitutional

26

27  _____

28  justifying the "decision to impound Odom's vehicle without a warrant requires the granting of Odom's
    motion to suppress," Dkt. 49 at 9, because Odom would have inevitably been ordered out of the vehicle
    regardless of whether the vehicle was lawfully impounded or not.

GOV'T MOTION TO RECONSIDER SUPPRESSION ORDER

CASE NO. 21-CR-00259 JST                    3

issues, the government had no opportunity whatsoever here to address the tow's constitutionality—which the Court treated as a dispositive issue in this case—after Odom raised it and was explicitly informed by the Court that the government prevailed.  The Court should therefore either find the issue waived or grant reconsideration of its order on this basis, and, when doing so, should conclude that the tow was constitutionally permissible because, as set forth below, the community caretaking exception is plainly applicable on this record.[2]

### (ii)    The community caretaking exception is applicable here

The tow of the BMW in which Odom was stopped was constitutional pursuant to the community caretaking exception.  Under this exception, "police officers may impound vehicles that jeopardize public safety and the efficient movement of vehicular traffic."  *Miranda v. City of Cornelius*, 429 F.3d 858, 864 (9th Cir. 2005).  To establish the exception applies, the government must prove that the vehicle was "parked illegally, posed a safety hazard, or was vulnerable to vandalism or theft."  *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012).

While only one of these three requirements must be met, here, all three are: the BMW was parked illegally, posed a safety hazard, and was vulnerable to vandalism or theft.  First, the BMW was parked illegally.  Guajardo Decl. ¶ 2.  Odom had pulled off the freeway upon being alerted to the traffic stop, turned right from the off-ramp, and pulled over to the right-hand shoulder of the road near the intersection of Liberty Avenue and 163rd Avenue in Ashland, Calif.  CR 39-1 ¶ 4.  The right-hand shoulder of the road immediately to the right of the off-ramp is a merge lane onto Liberty Avenue and is a no-park zone.  Guajardo Decl. ¶ 2.  The merge lane where Odom pulled over is depicted in the pictures below, which also shows a sign that states "No Parking Any Time."[3]

---

[2] Even if the Court were disinclined to grant reconsideration based on the government's being prevented from briefing and arguing this previously, the Ninth Circuit has recognized that the government may proffer a new theory and evidence to show the lawfulness of a search and seizure when moving for reconsideration and is not required to provide any justification for doing so.  *United States v. Rabb*, 752 F.2d 1320, 1323 (9th Cir. 1984) (abrogated on other grounds) ("[I]f the record reveals matters which indicate that the evidence was lawfully obtained, the district court may reconsider its suppression order. . . .").  On this basis, too, the government argues that the Court should conclude that the community caretaking exception is applicable and the tow was constitutional.

[3] Google Maps; https://www.google.com/maps/@37.7005507,-122.1104935,3a,75y,316.98h,82.96t/data=!3m6!1e1!3m4!1s28SIJdcKXITO91bcc5ErsA!2e0!7i13312!8i





1  Because the BMW was parked on the shoulder of a merge lane that is a no-park zone, it was parked

2  illegally.  Guajardo Decl. ¶ 2.

3        Second, as seen on the map above, this intersection serves as both an on- and off-ramp for Interstate

4  580, which connects Interstate 5—the main north-south artery in California—with the San Francisco Bay

5  Area.  Odom turned right onto Liberty Avenue after exiting Interstate 580 and pulled over to the side of

6  the road.  Guajardo Decl. ¶ 2.  Based on the circumstances, the officers correctly determined that the BMW

7  would pose a significant and immediate safety hazard if it had been left where Odom parked it, which was

8  in a merge lane for cars exiting the freeway and trying to access Ashland surface streets.  *Id.*  To reach

9  this merge lane, drivers exiting the freeway make a 180-degree turn, meaning they have no visibility to

10 the merge lane until they reach it.  *Id.* ¶3.  Those drivers would not be able to see the abandoned BMW

11 until they themselves were in the relatively short merge lane and, at that point, it might be too late to avert

12 a crash.  *Id.*  Even if those exiting the freeway could see the BMW in the merge lane before they reached

13 it, it probably wouldn't do much good; Odom parked the BMW at this location in the middle of the night

14 on a poorly lit stretch of the road.  *Id.*  Drivers exiting the freeway would likely have no means of seeing

15 and avoiding the deserted BMW in the dark had it remained in that location.  *Id.*  Allowing the BMW to

16 remain illegally parked on the side of the merge lane would pose a safety hazard to both traffic getting off

17 the freeway, as well as cars traveling on Ashland surface streets.

18       Finally, the BMW was vulnerable to vandalism or theft in the location it was parked.  The BMW

19 would have been left unsecured in the middle of the night on a poorly lit street.  Guajardo Decl. ¶ 2.

20 Moreover, the area in which Odom parked is a high crime area with frequent car theft and vandalism

21 incidents.  *Id.* ¶ 4.  As the Court acknowledged at the hearing, it would "want that [BMW] in a tow lot if

22 that's my car" due to the threat of vandalism at that time of night.  Supp. Tr. 18:11-15.  As such, the BMW

23 was vulnerable to vandalism or theft had it been left on the shoulder of the merge lane.

24       It is clear that the community caretaking exception applies to this case.  *Cervantes* requires that

25 the government must prove that the vehicle was "parked illegally, posed a safety hazard, or was vulnerable

26 to vandalism or theft."  703 F.3d at 1141.  While only one of these conditions must be met to establish the

27 exception, here, all three existed.  This is a textbook case of the circumstances under which the community

28

caretaking exception applies.  As such, the tow was constitutional and the firearm should not be excluded because of it.

**B.     The Court Failed to Properly Apply the Totality of Circumstances Analysis for Reasonable Suspicion and Erred in Omitting or Discounting Relevant Factors**

**(i)     Legal Standard**

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const. amend. IV.  The Supreme Court has interpreted the Fourth Amendment to allow for brief detention of persons where there is reasonable suspicion to believe that crime is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968).  The Court further established that law enforcement may conduct a limited search of a person during a *Terry* stop, without running afoul of the Fourth Amendment, when officers believe that the person is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009) (citing *Terry*, 392 U.S. at 8).  The Court extended these principles to traffic stops, holding that "officers who conduct routine traffic stops may perform a pat-down of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Id.* at 332 (internal quotation marks, alterations, and citation omitted).  Finally, "it is well established that an officer effecting a lawful traffic stop may order the driver and the passengers out of a vehicle." *United States v. Williams*, 419 F.3d 1029, 1030 (9th Cir. 2015).

To ascertain whether an individual is armed and dangerous such that a pat-down search or *Terry* frisk is justified, the Court considers the "totality of the circumstances surrounding the stop." *United States v. Burkett*, 612 F.3d 1103, 1107 (9th Cir. 2010) (quoting *United States v. Hall*, 974 F.2d 1201, 1204 (9th Cir. 1992)).  This is an objective analysis, and an officer's subjective reasons for conducting a stop or arrest are irrelevant. *See United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016).  "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 28.  Indeed, all that is required is that the officer "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a belief that the individual is armed and dangerous, *id*. at 21—"more than an inchoate and unparticularized suspicion or hunch," *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal

quotation marks omitted).

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020) (internal quotation marks and citation omitted). "Because it is a less demanding standard, reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." *Id.* at 1188. Indeed, "[t]he standard depends on the factual and practical considerations of everyday life on which *reasonable and prudent men*, not legal technicians, act." *Id.* at 1188 (internal quotation marks and citations omitted) (emphasis original). "Courts cannot reasonably demand scientific certainty where none exists. Rather, they must permit officers to make commonsense judgments and inferences about human behavior." *Id.* (internal quotation marks and citation omitted).

Moreover, officers "need not rule out the possibility of innocent conduct." *Navarette v. California*, 572 U.S. 393, 403 (2014). Nor does the reasonableness of the officers' action "turn on the availability of less intrusive investigatory techniques." *Id.* at 404 (internal quotation marks and citation omitted).

Finally, the determination of whether reasonable suspicion exists is made with reference to the "collective knowledge of the officers involved, and the inferences reached by experienced, trained officers." *Burkett*, 612 F.3d at 1107 (quoting *Hall*, 974 F.2d at 1204). This collective knowledge is part of the "totality of the circumstances" analysis required by the case law, which "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Arvizu*, 534 U.S. at 273. Under this approach, each of the individual facts known to the officers can be "innocent in itself" or "readily susceptible to an innocent explanation," and yet the totality of the acts taken together can warrant further investigation or a pat-down search for weapons. *Id.* at 724 (internal quotation marks omitted); *accord Foster v. City of Indio*, 908 F.3d 1204, 1216 (9th Cir. 2018) (noting that "even factors consistent with innocent conduct may give rise to reasonable suspicion").

1

2

> **(ii)    The Court's mode of reasonable suspicion analysis parallels the impermissible divide-and-conquer approach as opposed to the requisite assessment of the totality of the circumstances**

3      In assessing whether reasonable suspicion existed for an officer to conduct a frisk, a district court

4   is required to view the factors of the stop using the totality of circumstances analysis, to see "the whole

5   picture." *Sokolow*, 490 U.S. at 8-10.  Here, however, the Court began by assessing and discounting each

6   factor independently, instead of weighing the factors together—which is required even if the factors are

7   individually innocuous or minor on their face.  *See, e.g.*, Dkt. 49 at 11 ("Thus, the Court considers this

8   [time-of-day] factor, but finds it insufficient by itself to support a finding of individualized reasonable

9   suspicion."); 14 (excluding from its totality analysis the inconsistent information about the BMW's

10  ownership provided by Odom); 16 (concluding the nervousness factor provides "minimal, if any, support

11  to the reasonable suspicion analysis"); 16 (determining that Odom's prior firearm offenses or gang

12  affiliations should not be considered in assessing reasonable suspicion); 17 (explaining that "time of day

13  does not provide individualized suspicion").  The Supreme Court expressly precludes this approach.

14  *Arvizu*, 534 U.S. at 274.  Indeed, the Supreme Court acknowledged that an individual factor can be

15  "innocent in itself" or "readily susceptible to innocent explanation," just as the Court found here, but when

16  all factors are taken together and "giving due weigh to factual inferences drawn by the law enforcement

17  officer," they can warrant a frisk for weapons or further investigation.  *Id.*  Such is the case here.  When

18  assessing the factors using the totality of circumstances methodology, and not the impermissible divide-

19  and-conquer approach, it is clear that the officers had reasonable suspicion to conduct the frisk.

20      As discussed in greater detail below, when viewed in concert, the factors are as follows:  Officers

21  pulled over a BMW speeding down Interstate 580 at 2:30 am.  In the officer's experience, late-night stops

22  tend to be more dangerous.  The car had no registration, the driver no license.  One officer checked to see

23  if the driver had any warrants; in the process, the officer discovered that the driver had gun- and gang-

24  related arrests and convictions.  Upon being asked to whom the BMW was registered, the driver stated

25  that it belongs to his sister, "literally right up the street."  The officer pulled the car's registration, which

26  showed that it was registered in a different town entirely.  The driver was nervous and shifting around in

27  the BMW as the officer spoke to him.  Because he had no license and could not legally drive the BMW,

28

GOV'T MOTION TO RECONSIDER SUPPRESSION ORDER

CASE NO. 21-CR-00259 JST                                    9

1   the officers had the driver exit the vehicle.  Immediately upon doing so, the officers conducted a frisk.

2   Looking at this picture as a whole, the officers had reasonable suspicion that Odom was armed and

3   dangerous when they removed him from the car.  As such, the pat search of Odom was constitutional.

4        Indeed, on the same day the Court ruled on the instant motion, the Ninth Circuit issued an

5   unpublished opinion upholding the denial of a suppression motion on facts similar to those at hand in a

6   case arising from this district.  *See United States v. Granados*, No. 20-10289, 2022 WL 612670, at *1 (9th

7   Cir. Mar. 2, 2022) (upholding the denial of a suppression motion and finding reasonable suspicion where

8   a driver had a prior violent felony, he "fidgeted" and moved around the car, and the smell of marijuana

9   emanated from the car).  In both cases, a number of equivalent factors existed: trained officers observed

10  that both defendants were nervous and shifting around the interior of their respective vehicles and both

11  defendants had serious criminal histories.  Granted, there are some limited distinctions between the cases.

12  In *Granados*, for example, the officer smelled marijuana emanating from the car and used that as a factor

13  that supported reasonable suspicion.  Officers did not smell marijuana coming from the BMW in this case.

14  Yet in the instant case, additional factors existed that result in a stronger basis for reasonable suspicion

15  than in *Granados*.  Here, the stop occurred in the middle of the night in a high crime area.  What's more,

16  Odom did not have a driver's license and was, at the very least, evasive about to whom and where the

17  BMW was registered.  The fact that he was driving at high speeds in the middle of the night without a

18  license in an SUV with no registration and was evasive about the car's ownership could result in the

19  inference that the car was stolen and the crime was ongoing, which would also contribute to an officer's

20  reasonable suspicion.  Because the present case is both similar to and presents stronger factors than

21  *Granados*, in which the Ninth Circuit agreed that reasonable suspicion existed, the Court here should also

22  find that the officers had reasonable suspicion to conduct the frisk.

23       **(iii)**    **Looking at the totality of circumstances, the officers' frisk of Odom comports with the Fourth Amendment**

24

25       Based on the officers' collective knowledge and the totality of the circumstances regarding the

26  stop, the officers did have reasonable suspicion upon removing Odom from his vehicle that Odom was

27  armed and dangerous.  Accordingly, the frisk that occurred immediately after Odom's removal from the

28  BMW is constitutional.  Here, the Court assessed several factors, such as prior criminal history, time of

GOV'T MOTION TO RECONSIDER SUPPRESSION ORDER

day, nervousness, and time spent in the car before the frisk, and erred as a matter of law in several of its findings.  Moreover, the Court's factual finding with respect to the inconsistent information provided by Odom ignores a salient fact that, at the very least, establishes the officer's reliance on the fact as reasonable.  Finally, as mentioned above, the Court impermissibly discounted factors individually, without assessing them in total.  This is in error.  *See Arvizu*, 534 U.S. at 724; *see also United States v. Leal*, 5 F. App'x 608, 609-10 (9th Cir. 2001) (holding that the district court "erred in discounting those factors which it considered 'neutral'").  Below, the Court's findings as to the individual reasonableness factors will be addressed in turn.

### (a)    Prior criminal history

In discussing the criminal history factor and the officer's knowledge of Odom's criminal history and gang affiliation from the CRIMS record check, the Court first stated that "the government [did not] describe the specifics of the 'affiliations with criminal gang activity' or 'firearms-related criminal history.'"  Dkt. 49 at 13.  The Court then concluded that, broadly, past convictions and gang affiliations do not support the inference that anyone is currently armed and dangerous, and excluded these factors from its totality analysis.  *Id.* at 16 ("The fact that Odom may have been charged or convicted of prior firearm offenses or gang affiliations does not support a reasonable officer's inference that Odom is currently armed and dangerous.  To hold otherwise would permit officers to expand a stop into a separate criminal investigation . . . .").

As a matter of law, this is incorrect.  Criminal history and gang affiliations do constitute "relevant and highly probative" factors that officers may consider in assessing whether there is reasonable suspicion that someone is currently armed and dangerous.  *United States v. Perez*, 603 F. App'x 620, 622 (9th Cir. 2015) (finding reasonable suspicion partially based on previous arrests and criminal conduct, as criminal history is "relevant and highly probative to the reasonable suspicion calculus."); *see United States v. Cotterman*, 709 F.3d at 968 (concluding that convictions can contribute to officers' reasonable suspicion).  By ruling that criminal history and gang affiliations are not factors to be considered and excluding those factors from its analysis, the Court erred.

Second, the Court erred in finding that the government had not met its burden to establish the

1   nature of Odom's prior convictions.  The government repeatedly offered such details to the Court.  *See,*

2   *e.g.*, Dkt. 39 at 2 ("Odom's criminal history includes a 2012 felony conviction for Carrying a Concealed

3   Firearms . . . and a 2016 felony conviction for Accessory to a Felony after the Fact."); *id.* at 2 n.1 ("While

4   Odom was convicted of Accessory to a Felony after the Fact in 2016, the underlying charges referenced

5   firearms, robbery, and criminal gang activity."); Supp. Tr. 35:8-11 ("But the gang finding bears on the

6   [2016] conviction. . . . [T]here were some – there were some gang-related charges of some kind dismissed,

7   but he also suffered a conviction that included that."); Supp. Tr. 35:22 (Court: "Where is the gun

8   conviction? . . . I have ECF43-1 in front of me . . ."  Government: "And so what I'm looking at is for the

9   2 – the 25400(A)(2)."  Court: "… Oh, carrying a concealed weapon.  There we go."); Supp. Tr. 43:4-9

10  (acknowledging, by the Court, that Odom may have been in prison as late as 2019, less than a year before

11  the August 2020 traffic stop).

12      As a matter of law, criminal history and gang affiliation should be considered in the totality of

13  circumstances analysis.  Moreover, the record contains evidence that Odom had a gun- and gang-related

14  criminal history—which the officer learned prior to removing Odom from the BMW.  These factors weigh

15  strongly in favor of finding reasonable suspicion.  Accordingly, the Court erred by failing to consider

16  these factors in its analysis.

17                          **(b)    Time of day**

18      The Court found that, even though the stop occurred around 2:30 a.m., the "time of day" factor

19  was "weak."  Dkt. 49 at 16.  The Court repeatedly stated that, "by itself," the "time of day" factor is not

20  sufficient to establish reasonable suspicion.  *See id.* at 11 ("Thus, the Court considers this factor, but finds

21  it insufficient by itself to support a finding of individualized reasonable suspicion."); 17 (explaining, in

22  conducting its totality of circumstances analysis, that "time of day does not provide individualized

23  suspicion").  In doing so, the Court appears to create a heightened standard that requires an individual

24  factor to independently establish reasonable suspicion.  As a result of its determination, the Court then

25  omits—or at the very least discounts—this factor from its totality of circumstances analysis.  This is

26  incorrect as a matter of law for two main reasons.

27      First, the heightened standard applied by the Court is not supported by law.  No one factor must,

28

GOV'T MOTION TO RECONSIDER SUPPRESSION ORDER

1   by itself, result in reasonable suspicion for that factor to be considered in the totality of circumstances

2   analysis.  Put another way, the Court must consider the "time of day" factor in its totality analysis, along

3   with other factors present during the stop, to determine if "the whole picture" supports a finding of

4   reasonable suspicion—even if the "time of day" factor is innocent or alone not sufficient for the Court to

5   make that finding.  *Sokolow*, 490 U.S. at 8-10.  Indeed, to allow otherwise would be antithetical to the

6   very purpose of the totality of circumstances analysis.  The Court erred as a matter of law in establishing

7   this heightened standard and excluding a present, relevant factor from its analysis.

8        Second, and relatedly, it does not follow that a factor is "weak" if it does not "by itself" result in

9   reasonable suspicion, as the Court found.  Indeed, controlling case law recognizes the danger associated

10  with conducting nighttime stops and relies upon it as a valid factor to consider in the reasonableness

11  analysis.  *See United States v. Mattarolo*, 209 F.3d 1153, 1158 (9th Cir. 2000) (finding relevant that the

12  frisk occurred at nighttime); *see also United States v. Garner*, 152 F. App'x 612, 613 (9th Cir. 2005)

13  (considering time of day, among other things, as a part of the reasonable suspicion for a frisk analysis).

14  In any event, even if an individual factor has innocent explanation, it may contribute to a finding of

15  reasonable suspicion when viewed in sum with the other factors.  *Arvizu*, 534 U.S. at 724.

16       As an additional matter, the Court's analysis also failed to give "due weight" to the "inferences

17  reached by experienced, trained officers."  *Burkett*, 612 F.3d at 1107.  The officer stated in his declaration

18  that nighttime traffic stops are more dangerous in his experience.  Dkt. 39-1 at 3.  The Court did not

19  recognize in its findings the "time of day" inference reached by the officer, much less weigh the inference

20  in its totality analysis.  *See generally* Dkt. 49.  This too is error.  *Ornelas v. United States*, 517 U.S. 690,

21  699 (1996) (explaining that "due weight" must be given to factual inferences drawn by local law

22  enforcement officers).

23                                  **(c)      Nervousness**

24       The Court found that "[n]othing suggests the nervousness Officer Guarjardo observed went

25  beyond the reaction any person might have to being pulled over by the police in the middle of the night."

26  Dkt. 49 at 16.  The Court concluded the nervousness factor provides "minimal, if any, support to the

27  reasonable suspicion analysis."  *Id.*

28

GOV'T MOTION TO RECONSIDER SUPPRESSION ORDER

Here, the Court bases its finding on a limited subset of the record; when viewed in total, and with deference to an experienced officer's inferences, as is required by law, the record presents a much stronger case for the nervousness factor.  Specifically, the Court relied upon the audio recording of the stop to determine that Odom did not sound nervous and thus the nervousness factor provided "minimal" support for reasonable suspicion.  Omitted from this finding is the evidence presented by the arresting officer, which cuts the other way, and which the Court is required to consider.  *See United States v. Valdes-Vega*, 738 F.3d 1074, 1077 (9th Cir. 2013) (citing *Arvizu*, 534 U.S. at 724) (explaining that, in making the reasonable suspicion determination, courts must "defer to the inferences drawn by" local officers).

Specifically, the officer stated that, while the officer was speaking with Odom, Odom appeared nervous and "was shifting and moving around the vehicle." Dkt. 39-1 at 2.  Here, the trained, experienced officer—who is well-aware of what normal reactions to police encounters look like, since he engages in it every day as part of his job—found Odom's reaction to be notably nervous and evasive.  *Id.*  The officer made firsthand, close-up, visual observations of Odom and made inferences based on those observations. *Id.*  There is no amelioration between the Court's determination that Odom's voice was not unusually nervous with the experienced officer's firsthand account that his physical actions were.  Indeed, the Court even fails to mention that the officer stated in his declaration that  the defendant was evasive, "shifting and moving around in the vehicle." CR 39-1 at 2.  While Odom's voice may have remained calm, his physical actions were not consistent with that.  The Court should have contemplated the physical indicia and the inferences made by the experienced officer.  *See Illinois* v. *Wardlow*, 528 U.S. 119, 124-25 (2000) (recognizing that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *see also United States v. Brown*, 996 F.3d 998, 1007-08 (9th Cir. 2021) (explaining that "abrupt movements or suspicious, furtive behavior" can justify officer fear for safety giving rise to frisk).

When viewing the record in total, Odom's nervousness and evasive conduct during the traffic stop, as reflected by his physical conduct and appearance that was observed firsthand by the experienced officer, weighs strongly—not minimally—in favor of finding reasonable suspicion.

### (d)    Inconsistent information

The Court found that the arresting officer made a good faith but unreasonable mistake about where

Odom said his sister lived.  On this basis, the Court determined that it was not a permissible mistake upon which the officer could rely for his reasonable suspicion.

The arresting officer, however, did not make an unreasonable mistake and this factor should have been—but was not—assessed in the Court's reasonable suspicion analysis.  First, the mistake was not unreasonable.  The officer stated that he believed that Odom provided him with an inconsistent statement about to whom and where the car was registered, and relied upon the inconsistency in assessing reasonable suspicion.  Specifically, the officer inquired whether the BMW was registered to Odom's sister and Odom confirmed and responded "it's literally right up the street."  The officer understood this to mean that the sister lived up the street, so when the car's registration was pulled and he saw that it was registered in a different town, the officer believed that Odom had provided inconsistent information.  CR 39-1 at 3.

The Court concluded that the officer was unreasonably mistaken.  As the Court explained the record:

> Officer Guajardo asked Odom how far he was from home, and Odom responded, "literally right up the street." Dashcam 2:21-2:23.  Officer Guajardo then asked Odom whether the car was registered to his sister and Odom responded "yeah." *Id.* at 2:30-2:34. Officer Guajardo said "okay," and a moment later Odom repeated, "it's literally right up the street." *Id*.

CR 49 at 14.  The Court concluded that the defendant "had already established that his home was right up the street, and he did not state that his sister lived up the street.  If Officer Guajardo thought that Odom provided inconsistent information, he was mistaken." *Id.*

What the Court's finding fails to account for is that the question about the BMW's registration occurred seven minutes after Odom's initial response to how far from home he was.  The court's conclusion that the second "literally right up the street" is a reiteration of Odom's first statement about where he lived makes considerably less sense given the significant time lapse and the interceding question.  At a bare minimum, it is not unreasonable for the officer to have understood that Odom's "literally right up the street" statement referred to the immediately preceding question about the BMW's registration, and not as a response to a question the officer posed seven minutes earlier.

Second, because it was reasonable for the officer to have understood the statement Odom provided

as inconsistent, the Court erred by failing to have considered this factor in conducting its reasonable suspicion analysis.  *Leal*, 5 F. App'x at 609-10.

### (e)    Time spent in the car before frisk

The Court found it "significant" that Odom was left in the car for six minutes before being removed for the frisk.  The Court concluded that if the officers did not feel that the defendant was a threat while seated in his car, there was no basis to conclude that the defendant posed more of a threat when he was removed from the BMW.  This reasoning is not supported by common sense or case law, and it risks incentivizing quicker reactions from officers where dangerousness is suspected, rather than taking time to assess the situation.  When an individual is in a car, that person poses less of a safety risk to an officer because there is barricade separating the two—the car.  When a defendant is removed from a car, the officer no longer has that substantial protection of the car's sheets of metal, plastic, and glass from the potentially armed and dangerous individual.  Indeed, the case that the Court relied upon, *United States v. I.E.V.*, 705 F.3d 430, 438 (9th Cir. 2012), is readily distinguishable.  There, the officers removed the driver and passenger from a car and engaged with them for several minutes before conducting the frisk.  The operative fact is time spent outside of the car before the frisk; here, as soon as the officer removed Odom from the car, the officer conducted the pat-down search and immediately located the loaded gun.  While the Court relied on this factor as one that cuts against finding reasonable suspicion, it is the opposite that is true.

### (f)    Totality of circumstances analysis

For all the reasons stated above, the government respectfully requests that the Court reconsider its decision regarding its reasonable suspicion determination.

### (iv)    The Exclusionary Rule does not apply

Even if the Court does not find reasonable suspicion, the Exclusionary Rule does not apply.  To trigger the rule, "police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  *Herring*, 555 U.S. at 144.  Here, the rule is not so triggered.  First, the conduct at issue was not "sufficiently deliberate" such that exclusion will meaningfully deter it.  The officers conducted an uncontested traffic stop in the

middle of the night, where the driver was nervous and shifting around his vehicle, had prior gun- and gang-related crimes, and had to exit the vehicle because he was not legally allowed to drive it.  Even excluding the issue of the inconsistent statement, courts across the Ninth Circuit have repeatedly found this conduct alone is sufficient to constitute reasonable suspicion.  *See, e.g.*, *United States v. Eddards*, No. 219CR00289JADNJK, 2021 WL 168517, at *2 (D. Nev. Jan. 19, 2021) (finding reasonable suspicion for a pat search following a traffic stop where the defendant was nervous, had a gang affiliation and criminal history, and the vehicle's plates and identification number did not match the car's make); *United States v. Rodriguez*, 100 F. Supp. 3d 905, 925 (C.D. Cal. 2015), *aff'd*, 695 F. App'x 339 (9th Cir. 2017) (finding reasonable suspicion existed for a pat search where a traffic stop occurred at midnight, the vehicle lacked valid license plates, the officer knew the defendant had been convicted of a violent crime and was on parole, and the defendant may have been involved in criminal behavior nearby); *United States v. Ramson*, No. 2:16-CR-113-GEB, 2016 WL 7324718, at *5 (E.D. Cal. Dec. 16, 2016) (finding reasonable suspicion for a frisk during a late night traffic violation seizure because it was nighttime, in a high crime area, where the officer knew that the defendant had a gun- and gang-related criminal history, and the defendant behaved oddly during his interaction with the officer, such as by not making eye contact).

For the same reason, the conduct was not "sufficiently culpable" where suppression is worth the cost to the system.  The Court seems to suggest that the officer's "improper calculus" was so unreasonable that any other "reasonably well trained officer would have known [it] was illegal in light of all the circumstances."  Dkt. 49 at 19.  The "improper calculus" reaches no such level.  Indeed, the Ninth Circuit recently upheld as constitutional a frisk that occurred under circumstances similar to those at hand.  *See Granados*, 2022 WL 612670, at *1.  The Exclusionary Rule is not triggered and the evidence should not be suppressed.

**III.    CONCLUSION**

This Court should grant the government's motion to reconsider and reinstate the excluded evidence.

DATED:  APRIL 1, 2022                                        Respectfully submitted,

                                                            STEPHANIE M. HINDS
                                                            United States Attorney

                                                            */s/ Kaitlin Paulson*
                                                            KAITLIN PAULSON
                                                            Assistant United States Attorney